UNITED WHOLESALE AND WAREHOUSE EMPLOYEES, LOCAL 261, RETAIL, WHOLESALE AND DEPARTMENT STORE UNION, AFL-CIO, et al., Petitioners,

v.

NATIONAL LABOR RELATIONS BOARD, Respondent.

No. 15482.

United States Court of Appeals District of Columbia Circuit.

Argued June 1, 1960.

Decided July 7, 1960.

Mr. David E. Feller, Washington, D. C., with whom Messrs. Arthur J. Goldberg and Jerry D. Anker, Washington, D. C., were on the brief, for petitioners.

Mrs. Nancy M. Sherman, Atty., National Labor Relations Board, with whom Messrs. Dominick L. Manoli, Associate Gen. Counsel, National Labor Relations Board, and Marcel Mallet-Prevost, Asst. Gen. Counsel, National Labor Relations Board, were on the brief, for respondent. Mr. Thomas J. McDermott, Associate Gen. Counsel, National Labor Relations Board at the time the record was filed, also entered an appearance for respondent.

Before EDGERTON, WILBUR K. MILLER and DANAHER, Circuit Judges.

DANAHER, Circuit Judge.

Conformably to our Prehearing Conference Rule 38(k), the parties agreed that the question here presented is: "Whether the Board properly concluded, on the facts stipulated by the parties before the Board, and in the circumstances of this case, that the Union violated Section 8(b) (4) (A) of the Act[1] by picketing, in furtherance of a primary strike against a manufacturer, at stores

---

1. Labor Management Relations Act, 1947, 61 Stat. 141, 29 U.S.C.A. § 158(b) (4) (A).

282 F.2d—52½

which purchased products from the manufacturer and sold them at retail."

We refer to certain of the stipulated facts. Perfection Mattress & Spring Company (herein, Perfection) at Birmingham, Alabama, manufactures mattresses, springs and furniture which Perfection sells to seven retail furniture stores in Birmingham. Petitioners are the bargaining representatives of Perfection's employees. A labor dispute having resulted in an impasse about October 14, 1958, petitioners picketed Perfection's plant. About October 27, 1958, petitioners requested the retail stores to cease their purchase of Perfection's merchandise. On October 31, 1958, and on November 5, 6, 8, 10, 14, 15 and 17, at least, petitioners engaged in peaceful picketing on the public sidewalk in front of each of the various retail stores. Not more than two pickets were so engaged at any one time. They carried signs which bore the legend "Products made by Perfection Mattress and Spring Company are made by non-union labor. As a consumer, please do not buy them. Local 261, AFL-CIO." The pickets did not appear until after the hour at which employees of the stores normally reported to work, and the pickets left before the hour at which the store employees normally ceased work at the end of the day. No employee of the stores quit work or indicated any inclination or intention to do so. None refused to handle Perfection-made products as a result of or during the picketing. Petitioners made no attempt to organize or recruit membership among the store employees. There was no work stoppage at any time, material here, by the store employees pursuant to the picketing. No appeal, other than by the picketing as described, was ever made by the petitioners directly to the store employees.

On November 10, 1958, Perfection through its attorney filed charges against the petitioners on the basis of which the General Counsel issued his complaint.[2] On January 7, 1959, the parties entered into a stipulation. They set forth the foregoing facts, among others, included the transcript of the hearing in the District Court, waived proceedings by a trial examiner and agreed to present the issues directly before the Board. The Board approved the plan.

Petitioners have insisted throughout that the sole purpose of their picketing was to advise consumers that Perfection products were made by non-union labor and to urge such consumers to refrain from buying Perfection products. The Board, two members dissenting, rejected the petitioners' contention, and thereupon ordered the union to "cease and desist from engaging in, or inducing or encouraging the employees of * * * any employers except Perfection Mattress & Spring Company, to engage in a strike or a concerted refusal in the course of their employment to * * * work on any goods * * * or to perform any services, where an object thereof is to force or require said retail furniture dealers * * * or any other employer or person, to cease doing business with Perfection Mattress & Spring Company."

We make random reference to the majority's Decision and Order. "It is sufficient that the necessary effect of the picketing is to induce employees to engage in a work stoppage." But there was no such effect, and no neutral employees ceased work. "The fact that picketing may not be successful in inducing a work stoppage is not controlling on the question of whether the picketing is violative of Section 8(b) (4) (A) of the Act. That a work stoppage did not occur does not in any way detract from the fact that the picketing activity *had as its necessary effect* the inducing and encouraging of employees to engage in a work stoppage in violation of Section 8(b) (4) (A)." (Emphasis added.) Again we observe that actually there was

2. On the same day, a petition for a preliminary injunction was filed, and after hearing a temporary injunction was issued which was affirmed on appeal. Retail, Wholesale and Department Store Union, AFL-CIO v. Rains, 5 Cir., 1959, 266 F.2d 503.

no such "necessary effect." The conclusion finds no support in the record.

The majority finally "find that by picketing the retail furniture stores of the named employers at entrances commonly used by the employees of those stores and the public, from time to time during business hours, for the purpose of forcing the owners of the retail stores to cease doing business with Perfection, the Respondents have induced and encouraged the employees of the owners of the retail stores to engage in a strike or concerted refusal to work in violation of Section 8(b) (4) (A) of the Act."

■ "The findings of the Board with respect to questions of fact if supported by substantial evidence on the record considered as a whole shall be conclusive."[3] Of course that provision does not commit us to accept the Board's ultimate finding. Quite the contrary, "Congress has merely made it clear that a reviewing court is not barred from setting aside a Board decision when it cannot conscientiously find that the evidence supporting that decision is substantial, when viewed in the light that the record in its entirety furnishes, including the body of evidence opposed to the Board's view." [4]

Here, we simply cannot say from this record viewed as a whole, that the union's appeal to the customers had the "necessary effect" of inducing the neutral employees to engage in a concerted work stoppage when no such result even remotely appears.

Difficulties inherent in varying factual situations present recurring problems, to be sure, with an ultimate result often turning upon situs, allied activity, the nature of the appeals to neutral employees, the objective of the picketing and similar factors. But running through the rationale of the decided cases and stemming directly from the Act are the statutory clauses which must be construed and applied in the circumstances of the particular case.[5] The statute which protects the right to strike does not at the same time forbid appeals to the public, to consumers or even to neutral employers. The Supreme Court's summary of the proscription of the Act is pertinent and, we think, controlling here.

■ The Court has told us [6] "[Section 8(b) (4) (A)] describes and condemns specific union conduct directed to specific objectives. It forbids a union to induce employees to strike against or to refuse to handle goods for their employer when an object is to force him or another person to cease doing business with some third party. [1] Employees must be induced; [2] they must be induced to engage in a strike or concerted refusal; [3] an object must be to force or require their employer or another person to cease doing business with a third person."

It is difficult to see how the basic elements of a section 8(b) (4) (A) unfair labor practice charge could more specifically be spelled out. Unless the facts in a particular case establish such essentials, no case can be made out. Otherwise stated, when "inducements or encouragements" are not "aimed at concerted, as distinguished from individual, conduct," the actions complained of are not within the proscription of the Act.[7]

3. 61 Stat. 148, 29 U.S.C.A. § 160(e); Local 761, International Union, etc. v. N.L.R.B., 107 U.S.App.D.C. 402, 278 F.2d 282, certiorari granted 1960, 364 U.S. 869, 81 S.Ct. 114, 5 L.Ed.2d 92.

4. Universal Camera Corp. v. National Labor Relations Bd., 1951, 340 U.S. 474, 488, 71 S.Ct. 456, 465, 95 L.Ed. 456.

5. Compare, e. g., Seafarers International Union, etc. v. N.L.R.B., 1959, 105 U.S. App.D.C. 211, 265 F.2d 585 with Local 761, International Union, etc. v. N.L.R.B., supra note 3.

6. Local 1976 United Brotherhood of Carpenters, etc. v. National Labor Relations Board, 1958, 357 U.S. 93, 98, 78 S.Ct. 1011, 1015, 2 L.Ed.2d 1186, reversing in part General Drivers, etc. v. National Labor Relations Bd., 1957, 101 U.S.App. D.C. 80, 247 F.2d 71.

7. National Labor Relations Board v. International Rice Milling Co., 1951, 341 U.S. 665, 670, 671, 71 S.Ct. 961, 964, 95 L.Ed. 1277. Here the Board, apart from the facts as stipulated, found in the transcript of the proceedings referred to in

Thus mere picketing,[8] under the circumstances shown on this record, does *not justify an enforcement order.* On the contrary, the Board's order under review will be set aside.

So ordered.

WILBUR K. MILLER, Circuit Judge, dissents.

---

note 2 supra, one or two instances of loud talking by pickets whose comments might be said to have been addressed to some neutral employees in one of the stores. E. g., "I would never cross a picket line, even to pay a bill. It's a good excuse not to pay it," said one.

Equivocal at best, such isolated statements seem to us to fall far short of inducements to the "concerted action" requirement of the Act.

8. Cf. National Labor Relations Bd. v. Local 50, Bakery and Confectionery Workers, 2 Cir., 1957, 245 F.2d 542.